UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**LINDA HARRIS,**

                    Case No. 20-cv-10512

        Plaintiff,

v.                      Hon. Arthur J. Tarnow

**THERAPY MANAGEMENT, INC.,**

        Defendant.

_____/

Jack W. Schulz (P78078)       Eric D. Smith (P38961)
SCHULZ LAW PLC          Smith Stevenson, P.C.
PO Box 44855             22260 Haggerty Road, Suite 110
Detroit, MI 48244         Northville, MI 48167
(313) 246-3590           (248) 277-3760
jackwschulz@gmail.com     eds@smithstevensonlaw.com
*Attorney for Plaintiff*       *Attorney for Defendant*

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Index of Authorities…..…………………………………………………………...iii

Statement of Issues Presented……………………...……………………….....v

Controlling or Most Appropriate Authority…........................................vi

Statement of Facts…………………………………....…………….…………...1

Argument………………………………………...……………….…………10

I.       SUMMARY JUDGMENT…………...…………………………………..10

I.       THE PLAINTIFF WAS TERMINATED BECAUSE OF HER AGE……...11

   A. *The proffered reason is insufficient to motivate the adverse*
      *employment action*………………………………………………………13

      1. Plaintiff and Teffault dealt with the same supervisor………………..14

      2. Plaintiff and Teffault were subject to the same standards………………15

      3. Plaintiff and Teffault engaged in the same conduct without such
         differentiating or mitigating circumstances that would distinguish
         their conduct or the employer's treatment of them for it………………..17

   B. *The proffered reason did not actually motivate Plaintiff's termination*…...20

Conclusion…………………………...……………...……………………..22

# INDEX OF AUTHORITIES

## CASES

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)…………………………………………………………………10

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)…………………………………………………………….....10

*Block-Victor v. CITG Promotions, L.L.C.*,
665 F. Supp. 2d 797 (E.D. Mich. 2009)………………………………………..……11

*Tilley v. Kalamazoo Cnty. Rd. Comm'n*,
777 F.3d 303 (6th Cir. 2015)…………………………………………………..…..11

*Geiger v. Tower Automotive*,
579 F.3d 614 (6th Cir. 2009)…………………………………………………..…..11

*Lefevers v. GAF Fiberglass Corp*.,
667 F.3d 721 (6th Cir. 2012)………………………………………………………...12

*Sarvak v. Urban Retail Properties, LLC*,
524 F. App'x 229 (6th Cir. 2013)……………………………………………….....12

*Lamer v. Metaldyne Co. LLC*,
240 Fed.Appx. 22 (6th Cir.2007)……………………………………………..……..13

*Pennington v. W. Atlas, Inc.*,
202 F.3d 902 (6th Cir. 2000)………………………………………………..……..13

*Armstrong v. Whirlpool Corp.*,
363 Fed. Appx. 317 (6th Cir.2010)…………………………………….……………13

*Miles v. S. Cent. Human Res. Agency, Inc*.,
946 F.3d 883 (6th Cir. 2020)……………………………………………...……..14

*Ercegovich v. Goodyear Tire & Rubber Co.*,
154 F.3d 344 (6th Cir. 1998)…………………………………………………...14

*Mitchell v. Toledo Hosp.,*
964 F.2d 577 (6th Cir.1992),……………………………………………….…..14

*Johnson v. Kroger Co*.,
319 F.3d 858 (6th Cir.2003)…………………………………………...……..14

## STATUTES

29 U.S.C. § 623…………………………………………………………...11

Mich. Comp. Laws § 37.2202…………………………………………….……11

## STATEMENT OF ISSUES PRESENTED

1.    Was Plaintiff terminated due to her age when a comparable employee outside of the protected class concurrently committed the same violation and was not terminated and circumstantial evidence demonstrates a discriminatory animus?

Plaintiff's Answer: Yes
Defendant's Answer: No

2.    Is Kaylyn Teffault a comparable employee to Plaintiff when she has the same supervisor, is subject to the same standards, and engaged in identical conduct without differentiating or mitigating circumstances?

Plaintiff's Answer: Yes
Defendant's Answer: No

## CONTROLLING AUTHORITIES PER LOCAL RULE 7.1

*Sarvak v. Urban Retail Properties, LLC*, 524 F. App'x 229 (6th Cir. 2013)

*Pennington v. W. Atlas, Inc.,* 202 F.3d 902 (6th Cir. 2000)

*Mitchell v. Toledo Hosp.,* 964 F.2d 577 (6th Cir.1992)

## <u>STATEMENT OF FACTS</u>

Plaintiff Linda Harris was 71 years old at the time of her termination from Defendant Therapy Management, Inc. ("TMI")—the oldest therapist. ***Exhibit A*** Contrary to assertion of Defendant, Plaintiff was not "hired" by Defendant at age 69. An accurate representation is that Plaintiff spent years working for Therapy Staff, a connected organization, prior to *transferring* to Defendant TMI. ***See Deposition of Linda Harris attached as Exhibit B ("Harris") at pp. 95-96; See also the Deposition of Donna Dyzinski as Exhibit C ("Dyzinski") at pp. 18*** Plaintiff's transfer is demonstrated by the existence of a "transfer form", a document inapplicable to new hires, as TMI "already had all her paperwork." ***Exhibit D; Dyzinski at 21*** Both Therapy Staff and TMI fall under the umbrella of the Diamond Group and have the same owners. ***Harris 95-96; Dyzinski at 14*** For this reason, Plaintiff was not interviewed or provided any training as a new employee[1]. ***Harris at 39, 96.*** Nor was she provided a handbook. ***Exhibit E***

Throughout her employment with Therapy Staff and TMI, Plaintiff worked as a Certified Occupational Therapy Assistant at the Riverview location. ***Exhibit F*** For nearly all of Plaintiff's employment with TMI there were only *two* COTAs

---

[1] Defendant incorrectly asserts that Plaintiff was a new hire selected by Ragu.  This is false. Ragu testified that he did not interview Plaintiff when she was transferred to full-time. ***Harris at 96.***  Likewise, the other termination decisionmaker, Area Manager Donna Dyzinski had not role in the interview or hiring of Plaintiff. ***Dyzinski at 17.***

placed at Riverview—Plaintiff and Kathleen Leclair ("Leclair"). *Harris at 96-97; Exhibit G* Plaintiff was one of the older employees at Riverview. *Harris at 97* Leclair informed Plaintiff to keep her guard up as the Riverview facility was routinely phasing out older employees and replacing them with younger recent graduates[2]. *Harris at 11-12* Both Plaintiff and Leclair observed older employees being rolled out for new graduates. *Harris at 16-17, 31; Exhibit G* In one instance, an employee (approximately 60-70 years old) explicitly told Plaintiff she felt she was terminated due to her age stating, "this is what they Riverview does." *Harris at 33-34* Leclair referenced a previous incident in which a previous COTA in her mid-sixties, Liping Xing, was forced out by TMI and replaced with a younger college graduate. *Exhibit G[3]* Leclair also remembered a physical therapy assistant in her mid-sixties who was similarly shown the door by TMI only to have a younger recent grad in her place. *Exhibit G* According to Plaintiff, the atmosphere was not supporting or encouraging for older employees. *Harris at 40*

---

[2] Defendant misquotes Plaintiff's complaint as alleging that this is a "decades old practice", however, the actual referenced sentence states "*Plaintiff Linda Harris was employed with Defendant Therapy Management, Inc. or an associated company as a certified occupational therapy assistant for decades* until they began phasing out older employees and replacing them with recent younger recent college graduates." **{ECF DOC NO. 1}**

[3] According to documentation provided by Defendant, Liping Xing (12/31/54) was a COTA assigned to the St. Jude's Nursing Center location and was allegedly terminated for "lack of activity" in November 2018. *Exhibit A* As stated by Leclair, a COTA twenty one years her junior, Jennifer Hamill (4/4/75) was hired at the same facility approximately two months later—following the Christmas holiday. *Exhibit A*

All therapy related positions at Riverview, including the COTA and Physical Therapy Assistant positions ("PTA") were part of the therapy department which was managed by Therapy Manager Ragunuath Gangadharan ("Ragu"). *See Deposition of Ragunuath Gangadharan attached as Exhibit H ("Ragu") at pp. 10; Dyzinski at 13* Ragu oversaw and was the individual charged with disciplining all therapists and assistants within the therapy department[4]. *Ragu at 10; Dyzinski at 13* Plaintiff and Leclair were supervised by Ragu. *Ragu at 7-8*; *Exhibit G*

According to Plaintiff and Leclair, employees were usually terminated right before the holidays. *Exhibit G; Harris at 16-17* Plaintiff became concerned for her job in early November 2018 when her supervisor Ragu quipped that Plaintiff "wasn't what she used to be," *Harris at 19* Plaintiff believed this comment directly related to her age. *Harris at 99-100* Plaintiff didn't complain because the atmosphere at Riverview was not encouraging. *Harris at 41*

Around the same time, a third COTA Kimberly Koskela ("Koskela") was hired by Defendant at a time where there was seemingly not enough work for an additional COTA. *Harris at 25-27, 97; Exhibit G* Koskela was much younger than Plaintiff and appeared to be a recent graduate. *Dyzinski at 74; Harris at 25-26,*

---

[4] This fact is significant as Defendant asserts that Plaintiff (COTA) and Teffault (PTA) are not comparable for purposes of discrimination claiming they have different supervisors. However, both Plaintiff and Teffault can (and were) only be disciplined by either Ragu or Donna Dryzinski. *Ragu at 10.* Both are assistant positions in the same department. *Dyzinski at 43-44.* The therapists who "supervised" Plaintiff and Teffault did not have any authority to administer discipline to them. *Ragu at 11; Teffault at 19.*

97[5]**. Both Plaintiff and Leclair believed Koskela was being hired in order to phase out Plaintiff. *Exhibit G*

<u>The events of November 14, 2018</u>

November 14, 2018, began no different than any other shift.  As always, Plaintiff was provided a list of patients in the morning who required treatment. One specific patient was assigned separate treatment from both Plaintiff and a twenty-three year old physical therapy assistant named Kaylyn Teffault. *See Deposition of Kaylyn Teffault attached as Exhibit I ("Teffault") at pp. 5, 16, 20* Upon arriving at the patients room, both the door and the curtain were open when Plaintiff and Teffault arrived. (an existing violation identical to that Plaintiff was allegedly terminated for) *Teffault at 20-21, Harris at 98* The first thing they did was shut the door. *Teffault at 21* Plaintiff observed the patient's feeding tube was removed so Plaintiff went to the nurses' station to request a nurse reinsert the tube. *Harris at 98* A certified nurse assistant ("CNA") entered the room and inserted the feeding tube. According to Teffault, the CNA left the room but did not close the door behind her upon leaving. *Teffault at 21* Teffault further testified that neither she nor Plaintiff realized that the CNA had left the door open because they correctly had the curtain pulled. *Teffault at 25* Teffault testified that when Plaintiff

---

[5] According to Teffault, another COTA, Melissa Slate, started around the same time as Teffault (within days of Plaintiff's termination). *Teffault at 38* Like Koskela, Slater is much younger than Plaintiff. *Teffault at 40*

opened the curtain, a state surveyor happened to walk by and observe the curtain open while the door was left open. (unknowingly to Plaintiff and Teffault) ***Teffault at 25*** Plaintiff spoke with the state surveyor and acknowledged that she, Teffault, and the CNA had unintentionally committed a violation. ***Harris at 99*** Teffault did not speak with the surveyor. ***Teffault at 22***

      After, Plaintiff walked down to inform Ragu that a state surveyor has observed a privacy violation by Plaintiff, Teffault, and a CNA, ***Harris at 99*** Ragu acknowledged that Plaintiff mentioned Teffault during the meeting. ***Ragu at 26*** Despite knowing of Teffault's involvement, Ragu did not question Teffault about the incident at all that day; even though Teffault walked to Ragu's office with Plaintiff and was initially lingering at the door. ***Teffault at 23, 26; Ragu at 32***

      Ragu called his supervisor, Area Manager Donna Dyzinski ("Dyzinski") and "notified her of the events." ***Dyzinski at 27*** Neither witnessed the events themselves. ***Dyzinski at 28*** During the call, Ragu did not mention Teffault at all. ***Dyzinski at 29*** He also incorrectly stated that Plaintiff opened the curtain surrounding the patient knowing the door was open. ***Dyzinski at 33, 34*** Based off Ragu's statements, Dyzinski recommended Plaintiff's termination.

It was Ragu who notified Plaintiff she was terminated[6]. ***Ragu at 25*** No documents of any kind were shown to Plaintiff during the termination meeting. ***Ragu at 39*** Nor was Plaintiff provided any explanation why she was being terminated. ***Harris at 82*** Plaintiff was terminated approximately 30-60 minutes after the incident. ***Harris 99; Dyzinski at 38*** Ultimately, Plaintiff was sent a termination letter simply stating she was terminated as an "at-will" employee without further explanation. ***Exhibit J***

Plaintiff disagrees she should have been terminated for this violation. ***Harris at 70*** At no point did Plaintiff tell Ragu that it was only her violation but that the state inspector witnessed three employees—Plaintiff, Teffault, and a nurse. ***Harris 99*** Plaintiff disputes telling the inspector that the incident was her fault and, instead, believes she stated that there were three individuals in the room during the violation—Plaintiff, Teffault, and a nurse. ***Harris at 52-53, 99*** Teffault notified Plaintiff that she was "stunned" that she was terminated because they were doing the same thing. ***Harris at 48*** Teffault testified that she was scared when she learned Plaintiff was terminated because she didn't want to get into trouble. ***Teffault at 30*** Notably, Teffault testified that an additional COTA, Melissa Slater, also much younger than Plaintiff, was hired around this time period as well. ***Teffault at 38, 40***

---

[6] Within its Motion, Defendant advances a new defense that Plaintiff was terminated at the instruction of Riverview manager Monica Morris.  However, neither Ragu or Dyzinski spoke with Morris prior to Plaintiff's termination. ***Dyzinski at 34-35***

On information and belief, TMI has never terminated any other comparable employees for a similar privacy violation. *Dyzinski at 73* The only discernable difference between Plaintiff and Teffault was the significant age gap—or what Defendant refers to as Plaintiff being more "seasoned." *Dyzinski at 51*

<u>Testimony demonstrates Plaintiff was terminated based off the subjective views of Ragunueth Gangadharan without considering past discipline or speaking with the the individuals alleged within Defendant's Motion with brief input from Dyzinski</u>

According to Ragu, the only other person he is aware of in the decision to terminate Plaintiff is his supervisor, Area Manager Donna Dyzinski. *Ragu at 25, 40* Ragu has no memory of speaking directly with the state surveyor prior to Plaintiff's termination. *Ragu at 27* Nor does he remember speaking with Riverview Manager Monica Morris ("Morris") prior to terminating Plaintiff. *Ragu at 36* He is only aware of Dyzinski's involvement in the decision. *Ragu at 40; Dyzinski at 26* Importantly, Dyzinski never spoke with Morris prior to terminating Plaintiff. *Dyzinski at 34-35* Dyzinski never reviewed any prior disciplinary history of Plaintiff. *Dyzinski at 60-61* Dyzinski did not speak with Plaintiff before terminating her or since. *Dyzinski 36* Importantly, neither Ragu nor Dyzinski has *ever* seen the state surveyor report. *Ragu at 37-38; Dyzinski at 33* Ragu was the only person who told Dyzinski that Plaintiff opened the curtain and violated a patient's privacy. *Dyzinski at 34* Notably, the Riverview facility itself does not

7

possess any documents or emails at all discussing or requesting the termination of

Plaintiff with Defendant TMI or relating to any violations by Plaintiff. ***Exhibit K***

Dyzinski was only informed about Teffault's involvement by Ragu *after*

Plaintiff was terminated. ***Dyzinski at 29***

<u>The treatment of comparable employee Kaylyn Teffault</u>

At the time of the incident, Teffault was approximately 23 years old—

approximately 48 years younger than Plaintiff[7]. ***Teffault at 5; Dyzinski at 44***

Although Defendant emphasizes that Teffault was only on her second day at the

facility, Teffault had been employed as a physical therapy assistant ("PTA") with

TMI for approximately five months at the time of the incident[8]. ***Teffault at 10;***

***Exhibit L*** Teffault was initially placed and went through orientation at TMI's

Applewood facility, however, occasionally filled in at the Riverview facility during

this time. ***Teffault at 11-12*** Teffault was fully trained on the Patient Bill of Rights

and patient privacy at least by June 2018 and the policies are the same at any

facility. ***Exhibit M; Teffault at 14; Dyzinski at 48*** According to Teffault, she got

the full-time job at Riverview specifically *because Ragu called her and told her to*

*apply*. ***Teffault at 17***

---

[7] Although obvious, both termination decisionmakers acknowledged knowing that Plaintiff was older than Teffault. ***Ragu at 22; Dyzinski at 44.***
[8] Defendant attempts to differentiate between Teffault's part-time employment prior to being placed full-time, but, according to Teffault, the job duties are the exact same with the exception of "extra paperwork." ***Teffault at 16-17.***

Both PTAs and COTAs are assistant positions within the therapy department managed by Ragu. ***Ragu at 16; Dyzinski at 43-44*** According to Dyzinski, Ragu oversaw all therapists and assistants. ***Dyzinski at 13***

Defendant's Motion distorts the reality of Teffault and Plaintiff's "supervision." Although Plaintiff (Certified Occupational Therapy *Assistant)* and Teffault (Physical Therapy *Assistant*) are provided work by a Certified Occupational Therapist and Physical Therapist respectively, those individuals did not have *any ability to discipline, hire, or fire*. ***Ragu at 10-11, 13; Teffault at 19*[9]** Both Plaintiff and Teffault could *only* be disciplined by Ragu and/or Dyzinski. ***Dyzinski at 14-15; Ragu at 10*** This is best demonstrated by reviewing the relevant discipline documentation and events for Plaintiff and Teffault relating to November 14, 2018. ***Exhibit N and O***

Unlike Plaintiff, Teffault was not questioned by *anyone* the day of the incident despite notice of her involvement. ***Teffault at 26*** Indeed, Ragu shrouded Teffault's involvement from Dyzinski before the decision to terminate Plaintiff was reached. ***Dyzinski at 29*** Two days after Plaintiff was already terminated, Teffault was questioned by Ragu and Dryzinski. ***Teffault at 27; Exhibit O*** During

---

[9] Despite the assertion that both Plaintiff and Teffault are actually supervised by employees other than Ragu, there is no mention of these alleged employee's involvement in any supervisory or disciplinary way within Defendant's Motion.

this meeting, Teffault explicitly told Dyzinski it was the CNA, and not Plaintiff, who left the door open. ***Teffault at 32*** It did not matter to Defendant.

Ultimately, Ragu and Dyzinski only issued Teffault a verbal warning for committing the *exact same* acts as Plaintiff. ***Teffault at 29*** A verbal warning is the lowest level of discipline issued by TMI. ***Ragu at 51*** Dyzinski testified that Teffault was "nervous" and Plaintiff was a "seasoned therapist" even though both were employed as assistants. ***Dyzinski at 51*** This is irrelevant as both have the equal job status and owe the same duty of privacy to a patient.

## ARGUMENT

### I.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, this court must construe all reasonable inferences in favor of the nonmoving party, ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp.***, 475 U.S. 574, 587 (1986), and must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 251 (1986).

10

## II.    AGE DISCRIMINATION

The ADEA and ELCRA prohibit employers from discriminating against employees based on age. ***See 29 U.S.C. § 623(a)(1); Mich. Comp. Laws § 37.2202(1)(a).*** Their purpose is to protect older workers from being deprived of employment on the basis of inaccurate and stigmatizing stereotypes, and to ensure that employers evaluate their employees on the basis of their merits and not their age. ***Block-Victor v. CITG Promotions, L.L.C.,*** 665 F. Supp. 2d 797 (E.D. Mich. 2009). Both statutes are analyzed using the same framework. ***Tilley v. Kalamazoo Cnty. Rd. Comm'n***, 777 F.3d 303, 307 (6th Cir. 2015). "To set forth a prima facie case of age discrimination using circumstantial evidence, a plaintiff must establish the four elements of the *McDonnell Douglas* test: 1) that she was a member of a protected class; 2) that she was discharged; 3) that she was qualified for the position held; and 4) that she was replaced by someone outside of the protected class." ***Geiger v. Tower Automotive***, 579 F.3d 614, 633 (6th Cir. 2009).

Here, the Defendant has conceded that the Plaintiff has presented a *prima facie* case. ***See Defendant's Motion for Summary Judgment [ECF DOC NO. 29] at pg. 12.*** As such, the Defendant correctly concedes that Plaintiff was a member of a protected class on the basis of her age (71), that she was terminated, that she was qualified for the position she held, and that she was replaced by someone outside of the protected class—younger employee(s) Koskela and/or Slater. ***Id.***

11

Thus, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action. *See **Lefevers v. GAF Fiberglass Corp**.*, 667 F.3d 721, 725 (6th Cir. 2012). Then "the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation as pretextual." ***Id.*** The plaintiff may show pretext by demonstrating that the employer's explanation "had no basis in fact, did not actually motivate the defendant's challenged conduct, or was insufficient to motivate the defendant's challenged conduct." ***Id.***

A. <u>Circumstantial evidence and the disparity of treatment between Plaintiff and Teffault demonstrates the pretextual nature of the alleged nondiscriminatory reason for termination presented by Defendant</u>

Within its Motion, Defendant articulates that Plaintiff was terminated due to her "violation of the important, highly-regarded privacy rights of one of Riverview's residents." ***See Defendant's Motion for Summary Judgment [ECF DOC NO. 29] at pg. 12.*** Plaintiff is able to demonstrate that this reasoning is pretextual in several ways.

To establish pretext, Plaintiff must show: "(1) that the proffered reason has no basis in fact; (2) that the proffered reason did not actually motivate the adverse employment action; or (3) that the proffered reason was insufficient to motivate the adverse employment action." ***Sarvak v. Urban Retail Properties, LLC***, 524 F. App'x 229, 234 (6th Cir. 2013) (internal citations omitted).

12

    *a. The proffered reason is insufficient to motivate the adverse employment action*

It is well-established that a terminated employee may show that an employer's stated reason for a retaliatory discharge was insufficient to motivate termination by producing evidence that other employees "were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." ***Lamer v. Metaldyne Co. LLC***, 240 Fed.Appx. 22, 31 (6th Cir.2007)(*unpublished*); *see also* ***Pennington v. W. Atlas, Inc.***, 202 F.3d 902, 909 (6th Cir. 2000); and ***Armstrong v. Whirlpool Corp.***, 363 Fed. Appx. 317 (6th Cir.2010)(*unpublished*). As such, insufficient motivation is "easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." ***Pennington v. W. Atlas, Inc.***, 202 F.3d 902, 909 (6th Cir. 2000). Demonstrating the differing treatment "attacks on the credibility of the employer's proffered motivation for firing plaintiff and, if shown, provide an evidentiary basis for what the Supreme Court has termed 'a suspicion of mendacity'." ***Id.***

    Here, Plaintiff directs the Court to the vastly different treatment she received compared to coworker Teffault—who is 48 years her junior.

Plaintiff "need not show an exact correlation" between herself and Teffault, but she still must show that she is "similar to [her] proposed comparator in 'all relevant respects.' " *Miles v. S. Cent. Human Res. Agency, Inc*., 946 F.3d 883, 893 (6th Cir. 2020). A district court "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998). In *Mitchell v. Toledo Hosp.,* 964 F.2d 577 (6th Cir.1992), we noted three factors relevant to determining whether employees are "similarly situated" in the context of cases alleging differential disciplinary action:

> to be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have [1] dealt with the same supervisor, [2] have been subject to the same standards and [3] have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Id. at 583; see also* **Johnson v. Kroger Co**., 319 F.3d 858, 867 (6th Cir.2003)("the weight to be given to each [Mitchell] factor can vary depending upon the particular case").

1. Plaintiff and Teffault dealt with the same supervisor

Both Plaintiff and Teffault were assistant therapists and Plaintiff was not her supervisor. *Dyzinski at 44; Teffault at 19* Both PTAs and COTAs are assistant positions within the therapy department managed by Ragu. *Ragu at 16; Dyzinski at 43-44* According to Dyzinski, Ragu oversaw all therapists and assistants.

14

***Dyzinski at 13*** Defendant's Motion distorts the reality of Teffault and Plaintiff's "supervision." Although Plaintiff (Certified Occupational Therapy *Assistant)* and Teffault (Physical Therapy *Assistant*) are provided assignments by a Certified Occupational Therapist and Physical Therapist respectively, those individuals did not have *any ability to discipline, hire, or fire*. ***Ragu at 10-11, 13; Teffault at 19***[10] Both Plaintiff and Teffault could *only* be disciplined by Ragu and/or Dyzinski. ***Dyzinski at 14-15; Ragu at 10*** This is best demonstrated by reviewing the relevant discipline documentation and events for Plaintiff and Teffault relating to November 14, 2018. ***Exhibit N and O*** Further, Teffault testified that she got the full-time job at Riverview specifically *because Ragu called her and told her to apply*. ***Teffault at 17***

The evidence demonstrates that both Plaintiff and Teffault were actually under the supervision of Ragu, and his supervisor Dyzinski.

2. <u>Plaintiff and Teffault were subject to the same standards</u>

Both Plaintiff and Teffault were attending to the patient in question in an equal capacity and with equal responsibility to the patient. Both PTAs and COTAs are assistant positions within the therapy department managed by Ragu. ***Ragu at 16; Dyzinski at 43-44***

---

[10] Despite the assertion that both Plaintiff and Teffault are actually supervised by employees other than Ragu, there is no mention of these alleged employee's involvement in any supervisory or disciplinary way within Defendant's Motion.

Although Defendant emphasizes that Teffault was only on her second day at the facility, Teffault had been employed as a physical therapy assistant ("PTA") with TMI for approximately five months at the time of the incident[11]. ***Teffault at 10; Exhibit L*** Defendant incorrectly suggests that Plaintiff was still in orientation as the evidence suggests difference. TMI's new hire policy states that new hires go through either a 60 or 90 day orientation period. ***Exhibit P*** This was also confirmed by Dyzinski; who elaborated that employees only go through orientation when they are first hired. ***Dyzinski at 17-18*** As demonstrated above, Teffault was employed with TMI for *five months* as of November 14, 2018.  Indeed, Teffault was initially placed and went through orientation at TMI's Applewood facility but occasionally filled in at the Riverview facility during this time. ***Teffault at 11-12*** Nonetheless, it is undisputed Teffault was fully trained on the Patient Bill of Rights and patient privacy at least by June, 2018 and the policies are the same at any facility. ***Exhibit M; Teffault at 14; Dyzinski at 48***

Plaintiff and Teffault are similarly situated in all relevant ways. The both were assistant in their relative specialties (occupational health and physical therapy) They both were informed about patient rights. They both were equally responsible for the patient's care and privacy rights.  Likewise, they were both

---

[11] Defendant attempts to differentiate between Teffault's part-time employment prior to being placed full-time, but, according to Teffault, the job duties are the exact same with the exception of "extra paperwork." ***Teffault at 16-17***

equally responsible for remedying the environment or any violation. Knowing they are equals with equal responsibility, Defendant's assertion that Teffault was not equally culpable because Plaintiff was a "seasoned" therapist evidences their discriminatory handling of this matter. ***Dyzinski at 51***

3. <u>Plaintiff and Teffault engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it</u>

It has been discussed in length herein that Plaintiff and Teffault were both treating the same patient and observed committing the same violation. Both Plaintiff and Teffault were assigned separate treatment of the patient in question. ***Teffault at 5, 16, 20*** Both Plaintiff and Teffault arrived together and found the door and the curtain were open when Plaintiff and Teffault arrived. ***Teffault at 20-21, Harris at 98*** The first thing they did was shut the door. ***Teffault at 21*** According to Teffault, it was neither the Plaintiff or here that left the door open, but that a CNA left the room but did not close the door behind her upon leaving. ***Teffault at 21*** Teffault further testified that neither she nor Plaintiff realized that the CNA had left the door open because they correctly had the curtain pulled. ***Teffault at 25*** Teffault testified that when Plaintiff opened the curtain, a state surveyor happened to walk by and observe the curtain open while the door was left open. (unknowingly to Plaintiff and Teffault) ***Teffault at 25*** After, both the state inspector and Ragu were informed that both Plaintiff and Teffault were in the room

17

treating the patient during the violation. ***Harris at 99*** Ragu acknowledged that

Plaintiff mentioned Teffault during the meeting. ***Ragu at 26*** The evidence

demonstrates that both Plaintiff and Teffault engaged in the exact same conduct.

In the eleventh hour, Defendant has raised alleged mitigating circumstances

attempting to differentiate Plaintiff from Teffault. Specifically, that Defendant

allegedly considered prior discipline of Plaintiff in reaching the decision to

terminate Plaintiff. This is demonstrably false for several reasons. Notably,

Plaintiff was not asked a single question about this prior discipline during her

deposition.  This is likely because Plaintiff was terminated terminated

approximately 30-60 minutes after the November 14, 2018 incident. ***Harris 99;***

***Dyzinski at 38*** No documents or prior discipline was discussed or shown to her.

***Ragu at 39; Harris at 82*** Nor did her termination letter mention so much[12].

***Exhibit J***

According to Ragu, the only other person he is aware of in the decision to

terminate Plaintiff is his supervisor, Area Manager Donna Dyzinski. ***Ragu at 25,***

***40*** Dyzinski never reviewed any disciplinary history of Plaintiff. ***Dyzinski at 60-61***

Ragu has no memory of speaking directly with the state surveyor prior to

Plaintiff's termination. ***Ragu at 27***

---

[12] An Additional unsigned "write up" was provided by Defendant in discovery but it was
conceded that this was never shown to Plaintiff and created after her termination. ***Exhibit U;***
***Ragu at 39; Dyzinski at 38-39***

Putting aside the clear factual dispute as to whether Ragu or Dyzinski actually considered alleged prior discipline presented by Defendant or that prior discipline was not raised until well after her termination, there are several factual issues omitted in Defendant's Motion. First, none of the alleged disciplinary actions involve patient privacy at all. The first two involve alleged attendance issues for which Plaintiff was not even provided a copy of the appropriate policy prior to her discipline. *Exhibit E, Q, and R* Immediately upon being informed a doctor note was required, Plaintiff provided one. *Exhibit E and S* For this reason, it was not even considered a verbal warning (*note that no level of discipline is signed on either write up). Exhibit E* Next, Defendant provides an *unsigned* discipline of an alleged incident where Plaintiff was written up after a patient showed Plaintiff a game on her phone. *Exhibit T* Plaintiff had never seen this document prior to filing the present lawsuit. *Exhibit E* There is no testimony contradicting Plaintiff's statement that this write up was ever shown to her. According to Dyzinski, even verbal warnings are typically signed. *Dyzinski at 54* Nonetheless, Ragu clearly had a misunderstanding of what it was Plaintiff was even accused of during his deposition and conceded it wasn't a violation for a patient to show an employee something on their phone. *Ragu at 52* As such, there is a question of fact whether Plaintiff actually had been provided this alleged

disciplinary act, whether they upheld, or even whether they were considered during the short time frame in which Plaintiff was terminated.

Similarly, the evidence creates a question of fact regarding whether Plaintiff was terminated at the request of the Riverview facility itself. Again, the window of time between the violation and Plaintiff's termination was approximately 30-60 minutes. ***Harris 99; Dyzinski at 38*** Plaintiff was never told that it was Riverview that wanted her terminated. ***Exhibit E*** Ragu does not remember speaking with Riverview Manager Morris prior to terminating Plaintiff or that she "instructed" TMI to terminate Plaintiff. ***Ragu at 36*** He is only aware of Dyzinski's involvement in the decision. ***Ragu at 40; Dyzinski at 26*** Donna also testified that she never spoke with Morris. ***Dyzinski at 34-35*** Next, the Riverview facility itself does not possess any documents or emails at all discussing or requesting the termination of Plaintiff with Defendant TMI or relating to any violations by Plaintiff. ***Exhibit K*** Regardless, even if Riverview requested Plaintiff's removal, TMI could have easily placed Plaintiff at another facility.

      b. *The Proffered reason did not actually motivate Plaintiff's termination*

Both Plaintiff and another COTA, Kathleen Leclair shared their observations of older employees, including COTAs, being forced out and replaced with recent graduates. ***Harris at 11-12, 16-17; Exhibit G*** Similarly, Plaintiff was told by another employee (approximately 60-70 years old) that she was fired because of

20

age discrimination and that "this is what they Riverview does." ***Harris at 33-34***
Leclair referenced a previous incident in which a previous COTA in her mid-sixties, Liping Xing, was forced out by TMI and replaced with a younger college graduate. ***Exhibit G*** According to documentation provided by Defendant, Liping Xing (12/31/54) was a COTA assigned to the St. Jude's Nursing Center location and was allegedly terminated for "lack of activity" in November 2018. ***Exhibit A***
The documentation confirms Leclair's statement as a COTA twenty-one year's Xing's junior, Jennifer Hamill (4/4/75), was hired at the same facility approximately two months later—following the Christmas holiday. ***Exhibit A***
Leclair also remembered a physical therapy assistant in her mid-sixties who was similarly shown the door by TMI only to have a younger recent grad in her place. ***Exhibit G***

Plaintiff also points to the circumstantial evidence involving the hiring of a third COTA, Kimberly Koskela, right before Plaintiff's termination at a time when there was not enough work for a third COTA. ***Harris at 25-27, 97; Exhibit G***
Koskela was much younger than Plaintiff and appeared to be a recent graduate.
***Dyzinski at 74; Harris at 25-26, 97*** Both Plaintiff and Leclair believed Koskela was being hired in order to phase out Plaintiff. ***Exhibit G*** It was Ragu's decision to hire Koskela. ***Ragu at 15*** The same time as Koskela was being hired, Ragu told

21

Plaintiff that she "wasn't what she used to be," *Harris at 19* Plaintiff believed this comment causally related to her age. *Harris at 99-100*

According to Plaintiff and Leclair, employees were usually terminated right before the holidays. *Exhibit G; Harris at 16-17* As such, Plaintiff was terminated right before the holidays. Collectively, this evidence is enough to create a question of fact as to whether the proffered reason actually motivated Defendant's decision to terminate Plaintiff.

## **CONCLUSION**

**WHEREFORE**, Plaintiff therefore respectfully requests this Honorable Court deny Defendants Motion for Summary Judgment as questions of material fact exist and grant all such further relief as shall meet equity and good conscience.

Respectfully submitted,

By: /s/ Jack W. Schulz
Jack W. Schulz (P78078)
*Attorney for Plaintiff*
PO Box 44855
Detroit, MI 48244
Dated:      February 19, 2021                (313) 246-3590

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**LINDA HARRIS,**

               Plaintiff,

v.

**THERAPY MANAGEMENT, INC.,**

               Defendant.

Case No. 20-cv-10512

Hon. Arthur J. Tarnow

_____/

| | |
|---|---|
| Jack W. Schulz (P78078) | Eric D. Smith (P38961) |
| SCHULZ LAW PLC | Smith Stevenson, P.C. |
| PO Box 44855 | 22260 Haggerty Road, Suite 110 |
| Detroit, MI 48244 | Northville, MI 48167 |
| (313) 246-3590 | (248) 277-3760 |
| jackwschulz@gmail.com | eds@smithstevensonlaw.com |
| *Attorney for Plaintiff* | *Attorney for Defendant* |

_____/

## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2021, I electronically filed the foregoing

**PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT** with the Clerk of

the Court using the ECF system which will send notification of such filing to as

counsel of record.

Respectfully submitted,

**SCHULZ LAW PLC**

By: __/s/    Jack W. Schulz__.
Jack W. Schulz (P78078)
SCHULZ LAW PLC
PO Box 44855

Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*

Dated:        February 19, 2021