UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA HARRIS,

    Plaintiff,

v.

THERAPY MANAGEMENT, INC.,

    Defendant.

_____/

Case No. 20-10512

SENIOR U. S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
ELIZABETH A. STAFFORD

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [29]**

Plaintiff, Linda Harris, is an elderly woman who was terminated from her job at a nursing facility in 2018. She brings this action against Defendant, Therapy Management, Inc. ("TMI"), her former employer, for age discrimination in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA") and Michigan's Elliot-Larsen Civil Rights Act, MICH. COMP. LAWS § 37.2101 *et seq.* ("ELCRA").

Before the Court is Defendant's Motion for Summary Judgment [29], filed February 1, 2021. Plaintiff filed a Response [30] on February 19, 2021. The Court held a Hearing on this motion [29] on October 28, 2021. For the reasons stated below, Defendant's Motion for Summary Judgment [29] is **DENIED**.

## FACTUAL BACKGROUND

At the time of the alleged discriminatory conduct, Plaintiff was employed by TMI as a full-time occupational therapy assistant and assigned to the Riverview Nursing Home in Detroit. (ECF No. 30-2, PageID.421). Plaintiff states she was hired by TMI's parent company, the Diamond Group, in 1996. (ECF No. 30-3, PageID.447-48; Compl. ¶ 10). In 2016, Plaintiff was transferred from Therapy Staff (another Diamond Group subsidiary) to TMI. (ECF No. 30-5, PageID.479; *see also* ECF No. 30-4, PageID.459).[1]

### a) The Patient Privacy Violation

Plaintiff was terminated on November 14, 2018, at the age of seventy-one. (ECF No. 30-2, PageID.421). On this date, Plaintiff was caring for a comatose patient alongside Kaylyn Teffault, another TMI physical therapy assistant, and an unidentified nurse not employed by TMI. (ECF No. 30-10, PageID.514). The patient's treatment area was surrounded by a curtain and in a room with a door. (*Id.*). The applicable patient privacy policy requires that, at any given time, either the curtain or door be closed in order to protect a patient from being visible and exposed. (ECF No. 29-3, PageID.277-78). The nurse exited the room, and, unbeknownst to Plaintiff or Teffault, left the door open on her way out. (ECF No. 30-10,

---

[1] Defendant characterizes this as a "hire", but the paperwork and affidavits show it to be akin to an internal transfer. (ECF No. 30-5, PageID.479; *see also* ECF No. 30-4, PageID.459).

PageID.514). At some point, Plaintiff opened the curtain to exit, not knowing that the door was also open, which left the patient exposed. (ECF No. 30-10, PageID.517). A state inspector, who was on site conducting a routine inspection of the facility, happened to walk by at that moment and witnessed the violation. (ECF No. 30-10, PageID.514; ECF No. 29-3, PageID.278).

After witnessing the violation, the state inspector spoke with Plaintiff. (ECF No. 29-3, PageID.278-79). Plaintiff then immediately walked to the office of her supervisor, Ragunuath Gargadharan, to notify him of what happened. (ECF No. 30-9, PageID.494). The parties dispute whether Plaintiff ever said she was personally responsible for the violation or that the three of them were together responsible. (ECF No. 29-3, PageID.279; ECF No. 30-3, PageID.443-44). No more than one hour later, Gargadharan called her back to his office and informed her she was being terminated. (ECF No. 30-3, PageID.451). She was provided no explanation for her termination. (ECF No. 30-3, PageID.446).

As a result of the privacy violation, Riverview received a citation from the state. (ECF No. 29-3, PageID.277). Although Teffault was also present during the privacy violation, she was not terminated and received only a verbal warning. (ECF No. 30-10, PageID.520).

b) **Plaintiff's Employment Record**

Plaintiff has three minor disciplinary infractions on her record. (ECF No. 29-12, PageID.370-76). Two of these are related to attendance issues. (*Id.*). Plaintiff avers she was not provided with Riverview's attendance policy before those incidents, and corrected the errors once she understood the policy by providing the required doctor's notes. (ECF No. 30-6, PageID.480). The third infraction occurred after she was allegedly observed playing a game with a patient on the patient's phone. (ECF No. 29-12, PageID.370-76). Plaintiff states she was never informed of this allegation, never saw this record before the litigation commenced, and notes that the record is unsigned by any supervisor or witness. (ECF No. 30-6, PageID.480; ECF No. 30, PageID.410). Plaintiff has had no prior disciplinary issues related to patient privacy rights.

c) **Alleged Discriminatory Conduct by Defendant**

A few days before her termination, Plaintiff's supervisor, Gargadharan, remarked that she was "not the same as she used to be," which Plaintiff understood to be a negative comment about her age. (ECF No. 29-4, PageID.285; ECF No. 30-3, PageID.452).

Plaintiff also alleges TMI has engaged in a pattern of phasing out older employees for younger hires and has a company-wide practice of targeting employees for termination because of their age. (Compl. ¶¶ 1, 36). Plaintiff supports

Page **4** of **16**

this claim through observations made by herself and another occupational therapy assistant, Kathleen Leclair, describing a pattern of Riverview firing older employees and replacing them with much younger hires. (ECF No. 30-3, PageID.431-38; ECF No. 30-8, PageID.483). Leclair's affidavit offers two anecdotal examples of older assistants at Riverview being terminated and replaced with younger hires. (*Id.*).

### d) The Instant Litigation

Plaintiff submitted formal charges of discrimination with the Equal Employment Opportunity Commission and was issued a right to sue in January 2020. (ECF No. 1-1, PageID.11).

Plaintiff is seeking lost wages and benefits, a declaration that TMI's actions were unlawful under the ADEA and ELCRA, compensatory, exemplary, and punitive damages, unspecified equitable relief, and attorney fees. (Compl. ¶¶ 38, 45). Defendant has moved for Summary Judgment, arguing Harris' termination was motivated by the privacy violation and her disciplinary record rather than age discrimination. (ECF No. 29).

## LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A 'material' fact is one that 'might affect the outcome of the suit under the governing law.' And a genuine dispute of material fact exists if 'the

evidence is such that a reasonable jury could return a verdict for the [nonmoving] party.'" *Abu-Joudeh v. Schneider*, 954 F.3d 842, 849 (6th Cir. 2020) (citations omitted) (first quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); then quoting *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016)).

The moving party bears the burden of demonstrating an absence of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

> If the moving party meets this burden, the burden then shifts to the nonmoving party to establish a "genuine issue" for trial via "specific facts." Additionally, the moving party is entitled to summary judgment when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

*Abu-Joudeh*, 954 F.3d at 840 (citations omitted) (quoting *Celotex Corp.*, 477 U.S. at 322, 324).

The Court views all of the facts in the light most favorable to the nonmoving party and draws "all justifiable inferences" in the nonmoving party's favor. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "In other words, 'at the summary judgment stage[,] the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Jackson*, 814 F.3d at 775 (alteration in original) (quoting *Anderson*, 477 U.S. at 249).

ANALYSIS

Plaintiff brings claims under both the ADEA and ELCRA. The ADEA and ELCRA prohibit employers from discriminating against employees based on age. 29 U.S.C. § 623(a)(1); MICH. COMP. LAWS § 37.2202(1)(a). This Court analyzes discrimination claims under both statutes using the same framework. *Drews v. Berrien Cnty.*, 839 F. App'x 1010, 1011-12 (6th Cir. 2021); *Tilley v. Kalamazoo Cnty. Rd. Comm'n*, 777 F.3d 303, 307 (6th Cir. 2015). When, as here, an age discrimination claim is based on circumstantial evidence, we apply the three-step *McDonnell Douglas* burden-shifting framework. *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009); *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). First, Plaintiff must establish a *prima facie* case of age discrimination. *Browning v. Dep't of the Army*, 436 F.3d 692, 695 (6th Cir. 2006). If she does so, Defendant must "articulate some legitimate, nondiscriminatory reason" for letting her go. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (quoting *McDonnell Douglas*, 411 U.S. at 802). Plaintiff must then produce evidence that could allow a jury to find that the proffered reason is a pretext designed to mask discrimination. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 & n.4 (6th Cir. 2009). On a motion for summary judgment, the Court considers whether "there is sufficient evidence to create a genuine dispute at each stage of the

*McDonnell Douglas* inquiry." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011) (citation omitted).

I. **Defendant has articulated a legitimate, nondiscriminatory reason for Plaintiff's termination.**

Defendant concedes that Plaintiff has established a *prima facie* case of age discrimination. (ECF No. 29, PageID.258). Accordingly, the Court's analysis begins with whether Defendant has articulated a legitimate nondiscriminatory reason for Plaintiff's termination. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 814-15 (6th Cir. 2011) (citations omitted). Defendant is not required to persuade the court that it was actually motivated by the proffered reasons; it is sufficient to raise a genuine issue of fact as to whether it discriminated against Harris. *Id*. To accomplish this, Defendant must clearly set forth, through the introduction of admissible evidence, its reasons for terminating Harris. *Id*.

Defendant asserts Harris was fired because 1) she violated the facility's privacy policy by leaving both the curtain and door open while cleaning a comatose patient, thereby exposing the patient, and 2) she had previously incurred several disciplinary write-ups. (ECF No. 29, PageID.258). It is undisputed that the privacy violation occurred, and that Plaintiff played some role in causing it. The privacy violation was observed by a state inspector, which led to the facility receiving a citation from the State of Michigan. (ECF No. 29-3, PageID.277). Defendant provided records of three prior disciplinary infractions: two related to calling in sick

Page **8** of **16**

without following proper procedures and one after she was observed playing a game with a patient on the patient's phone (which is against the facility's policy). (ECF No. 29-12, PageID.370-76). This is sufficient evidence to satisfy Defendant's burden of production at this second stage of the *McDonnell Douglas* analysis. *See Provenzano*, 663 F.3d at 814-15.

> **II.    Plaintiff has created genuine disputes of fact as to whether Defendant's proffered reason was a pretext for age discrimination.**

Since Defendant has provided a legitimate, non-discriminatory reason for the termination, the burden shifts back to Plaintiff to "produce sufficient evidence from which the jury may reasonably reject the employer's explanation as pretextual." *See Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 725 (6th Cir. 2012). A plaintiff may show pretext by demonstrating that their employer's explanation "had no basis in fact, did not actually motivate the defendant's challenged conduct, or was insufficient to motivate the defendant's challenged conduct." *Id.*

Plaintiff here argues both that the proffered reason was insufficient to motivate her termination and that it did not, in fact, motivate her termination. (ECF No. 30, PageID.403). Plaintiff has succeeded in demonstrating factual disputes as to both issues.

### A. Was Defendant's proffered reason sufficient to motivate Harris' termination?

A plaintiff may show that an employer's stated reason was insufficient to motivate termination by producing evidence that other employees "were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Lamer v. Metaldyne Co. LLC*, 240 F. App'x. 22, 31 (6th Cir. 2007); *see also Pennington v. W. Atlas, Inc.*, 202 F.3d 902, 909 (6th Cir. 2000); *Armstrong v. Whirlpool Corp.*, 363 F. App'x 317 (6th Cir. 2010). Plaintiff must show that she is similarly situated to her proposed comparator in all relevant aspects, though need not demonstrate an exact correlation between the two. *Miles v. S. Cent. Human Res. Agency, Inc.*, 946 F.3d 883, 893 (6th Cir. 2020).

District courts consider several factors in determining whether two employees are "similarly situated": whether the two employees had the same supervisor, whether they were subject to the same standards, whether they "have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it," and differences in job title, responsibilities, experience, and work record. *Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir. 1992); *see Leadbetter v. Gilley,* 385 F.3d 683, 691 (6th Cir. 2004). The weight given to any factor can vary depending on the particular case. *Johnson v. Kroger Co.*, 319 F.3d 858, 867 (6th Cir. 2003).

Plaintiff argues the "vastly different" treatment she received compared to her coworker Teffault demonstrates the Defendant's proffered reason was insufficient to motivate her termination. (ECF No. 30, PageID.404). Plaintiff states that Teffault is forty-eight years her junior, also participated in the privacy violation, and yet was not terminated after the incident. (*Id.*).

Defendant acknowledges Teffault was treated differently than Plaintiff after the privacy violation. (ECF No. 29, PageID.261). However, it argues she is not a similarly situated employee, and therefore it is improper to draw any inference from the different treatment she received. (ECF No. 29, PageID.262). To show Plaintiff and Teffault are not similarly situated, Defendant claims the two have different supervisors, positions, qualifications, job responsibilities, work in different disciplines, perform different functions, code their services differently, that Plaintiff has many years more experience than Teffault, and that the two employees played different roles in causing the privacy violation. (ECF No. 29, PageID.262). Plaintiff disputes both the factual claims underlying these alleged differences and also the relevance of these factors. (ECF No. 30, PageID.404).

Most of the differences Defendant points to are not relevant to determining whether this privacy violation was sufficient motivation to fire Harris but not Teffault. In this case, the factors which are relevant are: i) whether the two had the same supervisor (because it would be relevant if the same supervisor fired one

employee for a privacy violation but not another), ii) whether the two were subject to the same standards (because it would be relevant if their conduct was governed by differing privacy codes), and iii) whether the two played similar or different roles in causing the privacy violation.

As an initial matter, it is undisputed that both Plaintiff and Teffault were subject to the same standards governing patient privacy. This supports a finding that the two were similarly situated. Second, although Defendant claims that Plaintiff and Teffault had different supervisors, Plaintiff has provided evidence that Gargadharan oversaw the department in which they both worked and was the person with the power to discipline, hire, or fire both of them. (ECF No. 30-9, PageID.487-89). The different staff members Defendant names as supervisors merely distributed assignments. (*Id.*). Accordingly, there is a genuine dispute of material fact as to who, in reality, supervised each person.

Finally, while Defendant asserts that Plaintiff caused the violation by pulling back the curtain while the door was open and that Teffault was not responsible (ECF No. 29, PageID.263), Plaintiff contends that the unidentified nurse caused the violation by leaving the door open and that she and Teffault share the same level of culpability. (ECF No. 30, PageID.408). Because the policy requires that either the curtain or door be closed while tending to a patient, Plaintiff has also raised a triable issue of fact as to whether she and Teffault "engaged in the same conduct without

such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it[.]" *Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir. 1992).

## B. Did Defendant's proffered reason actually motivate Plaintiff's termination?

Plaintiff also contends that discriminatory animus against older employees, and not the privacy violation, was what motivated her termination.

Plaintiff claims that a few days before her termination, her supervisor Gargadharan told her "she wasn't what she used to be," which Plaintiff understood to be a comment on her age. (ECF No. 29-4, PageID.285; ECF No. 30-3, PageID.452). Defendant disputes this interpretation. (ECF No. 29, PageID.256; ECF No. 29, PageID.265). A jury could find that such a comment, made by the person with hire/fire power just before an employee's termination, is evidence the proffered reason was pretextual and the firing was actually motivated by discriminatory animus.

Plaintiff further claims that Defendant was not actually motivated by her prior disciplinary record, because Drzinski stated she did not recall reviewing this record before she and Gargadharan decided to terminate Plaintiff. (ECF No. 30, PageID.409; ECF No. 30-4, PageID.475-76). Plaintiff notes that only between thirty and sixty minutes elapsed between the privacy violation and her termination, which she argues is not sufficient time for the decision-makers to have meaningfully

reviewed her disciplinary record and taken it into consideration. (ECF No. 30-4, PageID.468; ECF No. 30, PageID.409). Defendant unequivocally states that Plaintiff's prior disciplinary infractions were part of the reason she was terminated. (ECF No. 29, PageID.258). This creates a clear factual dispute as to whether Plaintiff's disciplinary record in fact motivated her termination.

Plaintiff also offers affidavits made by herself and another occupational therapy assistant, Kathleen Leclair, in which they both describe observing a pattern of Riverview firing older employees and replacing them with much younger hires. (ECF No. 30-3, PageID.431-38; ECF No. 30-8, PageID.483). These affidavits offer two anecdotal examples of older assistants at Riverview being terminated and replaced with younger hires. (*Id.*). Defendant correctly notes these allegations are vague, unspecific, and based largely on suppositions made by Plaintiff and Leclair. (ECF No. 29, PageID.257). If a jury found these accounts convincing, this evidence could lead them to conclude there is a pattern of age discrimination at Riverview and that the proffered reason for this termination was pretextual.

Defendant asks the Court to consider the fact that Plaintiff was hired and terminated by the same individuals, Gargadharan and Drzinski. (ECF No. 29, PageID.263-63). Defendant argues Plaintiff was sixty-nine at the time she was hired at Riverview, and that in similar cases, courts have found "it is simply incredible . . . that the company officials who hired [an employee] at age fifty-one had suddenly

Page **14** of **16**

developed an aversion to older people two years later." *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 463 (6th Cir. 1995) (quotation omitted). However, Plaintiff alleges she has been employed by Defendant for over twenty years. (ECF No. 30, PageID.392). Her placement at Riverview is labeled as a "transfer" in her paperwork rather than as a "hire" and affidavits reiterate this. (ECF No. 30-5, PageID.479; *see also* ECF No. 30-4, PageID.459). Thus, Defendant's same-actor argument does not hold water because the supervisor alleged to have discriminated here was not the same person who hired Plaintiff, nor was she of a similar age when the alleged discrimination took place as when she was hired. Accordingly, Plaintiff has raised multiple factual disputes as to whether the privacy violation and her disciplinary record actually motivated her termination.

## CONCLUSION

Plaintiff has established a *prima facie* case of age discrimination, and Defendant has provided a legitimate, nondiscriminatory reason for her termination. Thus, this motion turns on whether Plaintiff has created a genuine dispute of fact as to whether this proffered reason was pretextual. Plaintiff has successfully raised multiple factual issues with respect to this question.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [29] is **DENIED**.

**SO ORDERED**.

                                                    s/Arthur J. Tarnow
                                                    Arthur J. Tarnow
Dated: December 10, 2021        Senior United States District Judge